Rodney D. GIBSON, Jr., Plaintiff,

v.

NEW HAMPSHIRE INSURANCE
CO., Defendant.

No. C2–01–0113.

United States District Court,
S.D. Ohio,
Eastern Division.

Dec. 21, 2001.

Frank Edward Todaro, Columbus, OH, for Plaintiff.

Steven G. Janik, Matthew J. Grimm, Janik & Dorman, Cleveland, OH, Percy Squire, Columbus, OH, for Defendant.

## MEMORANDUM OPINION AND ORDER

GRAHAM, District Judge.

This is a declaratory judgment action in which the plaintiff Rodney D. Gibson, Jr. ("Gibson") seeks to establish his entitlement to uninsured/underinsured motorist insurance ("UIM") coverage under policies of automobile insurance issued by defendant New Hampshire Insurance Co. ("New Hampshire") to his employer, Jegs Automotive, Inc. ("Jegs"). Plaintiff seeks UIM benefits for the death of his wife, Nancy A. Gibson, and their 10–month old child, Travis, as a result of an automobile accident with an uninsured motorist that occurred on February 7, 1998 in Franklin County, Ohio. The potential existence of UIM coverage under Jegs's policy arises by virtue of a 1999 decision of the Supreme Court of Ohio in the case of *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999). Claims by employees seeking UIM coverage under an employer's automobile policy for accidents unrelated to their employment have become known as *"Scott–Pontzer"* claims.[1]

---

1. *Scott–Pontzer* and its progeny created a new class of uninsured motorist claims for personal injury and wrongful death sustained by employees of corporate insureds and their family members arising out of the use of automobiles not insured under the employer's policy and resulting from accidents unrelated to their employment. Such claims are governed by Ohio's 15–year statute of limitations for actions based on contract. As a result, insurers of corporate and business risks in Ohio were faced with substantial unexpected liabilities under high-limit policies for risks they did not intend to insure and for which

Here, New Hampshire issued two separate policies to Jegs that provided various forms of automobile insurance, to wit: 1) a commercial auto policy with policy limits of $1,000,000; and 2) a commercial umbrella liability policy with policy limits of $5,000,000. New Hampshire concedes that pursuant to *Scott–Pontzer*, plaintiff is entitled to UIM benefits for the death of his wife and child under the primary policy, but New Hampshire disputes his entitlement to UIM benefits under the umbrella policy. This matter is now before the court on the cross-motions for partial summary judgment of plaintiff and New Hampshire.

In *Scott–Pontzer*, Christopher T. Pontzer, an employee of Superior Dairy, Inc. ("Superior"), was killed in an accident that had nothing to do with his employment while he was driving an automobile owned by his wife, Kathryn Scott–Pontzer. Superior was insured under a commercial automobile liability policy issued by Liberty Mutual Fire Insurance Company ("Liberty Fire"). Superior was also insured under an umbrella excess insurance policy issued by Liberty Mutual Insurance Company ("Liberty Mutual"). The declarations page of the Liberty Fire policy named Superior Dairy, Inc. as the named

insured. The Liberty Fire policy included UIM coverage. The definition of insured for the purposes of UIM coverage was as follows:

B. Who Is An Insured

1. You.

2. If you are an individual, any family member.

Liberty Fire argued that the policy language indicated the parties' intent that Superior was the only named insured and that the policy did not provide individual coverage for any of Superior's employees. The Supreme Court of Ohio disagreed, finding that the definition of insured was ambiguous, asserting that it "would be reasonable to conclude that "you," while referring to Superior, also includes Superior's employees, since a corporation can act only by and through real live persons." [2] *Scott–Pontzer*, 85 Ohio St.3d at 664, 710 N.E.2d 1116. Finding on this basis that the definition of insured was subject to various interpretations, the court applied the well-settled rule that policies of insurance that are in language selected by the insurer and that are reasonably open to different interpretations will be construed most favorably to the insured [3], and the court held

---

they did not charge a premium for claims extending back for a period of 15 years. The resulting losses were estimated at $1.5 billion. *See* Joanne Waldman, *Grassroots Success in Ohio*, Risk Management, December 1, 2001. This precipitated a crisis in Ohio's commercial auto insurance market, which included policy cancellations, skyrocketing premiums and several major insurers threatening to leave the Ohio market altogether. *See* Meg Fletcher, *Rulings that Expanded Exposures Prompt Legislation: Ohio Narrows Auto Liability*, Business Insurance, August 20, 2001. The Ohio legislature attempted to restore some degree of stability to the market by eliminating future *Scott–Pontzer* claims through the repeal of the mandatory offering of UIM coverage found in Ohio Rev.Code § 3937.18 on October 31, 2001.

In light of all of the above, the last sentence of Justice Lundberg Stratton's dissenting opinion in *Ezawa v. Yasuda Fire & Marine Ins. Co. of Am.*, 86 Ohio St.3d 557, 559, 715 N.E.2d 1142 (1999) seems prophetic: "Pandora's box continues to release its contents."

2. Why this renders the definition of insured ambiguous is a mystery. The fact that corporations can act only through their agents has never threatened the concept of independent corporate existence.

3. Rules of construction are intended to aid courts in determining the intent of the contracting parties. In *Scott–Pontzer*, the Supreme Court of Ohio seems instead to have applied the rule against the insurer in a punitive fashion. It is impossible to believe that

that Pontzer was an insured under the UIM coverage provided by the Liberty Fire policy.

The court also held that Pontzer was an insured for the purposes of UIM coverage under Liberty Mutual's umbrella policy even though that policy did not include UIM coverage. This resulted from the fact that Liberty Mutual had failed to offer such coverage as required by Ohio Revised Code § 3937.18 and Liberty Mutual's failure to do so resulted in the existence of UIM coverage by operation of law. *See Gyori v. Johnston Coca–Cola Bottling Group*, 76 Ohio St.3d 565, 568, 669 N.E.2d 824 (1996).

Because the policy was not written to provide UIM coverage, the Liberty Mutual umbrella policy, unlike the Liberty Fire policy, did not contain a definition of insured for the purposes of UIM coverage. *See Scott–Pontzer*, 85 Ohio St.3d at 665, 710 N.E.2d 1116. The Supreme Court of Ohio held nevertheless, without further explanation, that "Pontzer as an employee of Superior Dairy was also an insured under Superior Dairy's umbrella/excess insurance policy[.]" *Id.* Perhaps the court reached this conclusion using the same rationale it employed in construing the commercial auto policy, *i.e.*, the proposition that since a corporation can only act through its employees, they must also be insureds under the policy.

In *Ezawa*, the Supreme Court of Ohio extended the rule of *Scott–Pontzer* to provide UIM coverage for an employee's family members where the UIM coverage provided in the policy issued to the employer defined the insured as follows:

B.  Who Is An Insured
   1.  You

2.  If you are an individual, any "family member."

Again, the court did not explain why family members were insured. It simply reversed the judgment of the court of appeals on the authority of *Scott–Pontzer*. *See Ezawa*, 86 Ohio St.3d at 558, 715 N.E.2d 1142; *see also Ezawa v. Yasuda Fire & Marine Ins. Co. of Am.*, No. 97APE10–1343, 1998 WL 353871 (Ohio Ct. App. Jun. 30, 1998). Perhaps the court reasoned that because employees are insureds under the employer's policy pursuant to *Scott–Pontzer* and because employees are individuals, it followed that their family members are also insureds pursuant to the express language of the definition of insured in the *Yasuda* policy. *See id.* (Lundberg Stratton, J., dissenting).

In the instant case, the Ohio uninsured motorist coverage form issued as part of New Hampshire's commercial auto policy contains a definition of insured identical to that contained in the policy in *Ezawa*. Thus, New Hampshire concedes that under *Ezawa*, plaintiff's wife and minor child are covered for UIM benefits under the commercial auto policy. New Hampshire's umbrella policy did not provide UIM coverage, but New Hampshire concedes that it exists as a matter of law just as it did in *Scott–Pontzer* because New Hampshire had not offered the coverage as part of the umbrella policy. New Hampshire argues, however, that UIM coverage for the plaintiff's wife and minor child does not exist under the umbrella policy because the umbrella policy, unlike the commercial auto policy, does not contain a definition of insured that extends coverage to family members of an insured. Noting that the

---

Superior could have intended to cover Pontzer under its commercial automobile policy while he was off duty and driving his wife's vehicle, and, for that matter, it is preposterous to think that either Liberty or Pontzer could have contemplated that Pontzer would be covered under Superior's policy.

rationale for finding Pontzer was an insured under Superior's umbrella policy in *Scott–Pontzer* rested on the fact that Pontzer was an employee of Superior, New Hampshire argues that since Gibson's wife and child were not employees of Jeg's, they are not insureds under the umbrella policy.

The holding in *Scott–Pontzer* would appear to be limited to employees of the corporate insured. The rationale of *Scott–Pontzer* would not justify extending the definition of insured to include an employee's family members who have no connection with the corporate insured.

Plaintiff, however, points to the following language in the umbrella policy's definition of insured:

2. Each of the following is also an "insured":

e. Any other person or organization who is insured under any policy of "Underlying Insurance". The coverage afforded such "insureds" under this policy will be no broader than the "Underlying Insurance" except for this policy's "Limit of Insurance[.]"

Plaintiff argues that since plaintiff and any members of his family are insureds under the UIM coverage of the commercial auto policy, which is a policy of "underlying insurance," then they are also covered under the umbrella policy by virtue of this provision. New Hampshire counters this argument by citing *Scott–Pontzer* for the proposition that provisions relating to liability coverage do not apply to UIM coverage when UIM coverage comes into existence in conjunction with a liability policy as a matter of law.

In *Scott–Pontzer*, the Supreme Court of Ohio refused to apply the scope of employment limitation of the umbrella policy to the UIM coverage stating:

[A]ny language in the Liberty Mutual umbrella policy restricting insurance coverage was intended to apply solely to excess *liability* insurance coverage and not for purposes of underinsured motorist coverage.

*Scott–Pontzer*, 85 Ohio St.3d at 666, 710 N.E.2d 1116.

It would seem to follow then that the provision relied upon by plaintiff would not apply to UIM coverage, because it was intended to apply solely to excess liability coverage. Further, inasmuch as the excess liability policy did not provide any UIM coverage, its reference to other persons or organizations insured in any policy of underlying insurance was intended to refer only to those persons or organizations insured in the *liability* coverage of any underlying policy. Plaintiff has not cited any provision in the *liability* coverage of the underlying policy that would extend the definition of insured to an insured's family members; instead, the provision plaintiff relies upon is part of the underlying policy's UIM coverage.

New Hampshire's motion for partial summary judgment is well-taken. Plaintiff's motion for partial summary judgment is denied. The UIM coverage that exists as a matter of law in conjunction with New Hampshire's umbrella liability policy does not cover Gibson's wife and child.

It is so ORDERED.