Ernest J. SZABO, Jr., et al., Plaintiffs,

v.

CGU INTERNATIONAL INSURANCE, PLC, Defendant.

No. C–3–01–242.

United States District Court,
S.D. Ohio,
Western Division.

Sept. 19, 2002.

Kenneth J. Ignozzi, Dyer Garofalo Mann & Schultz, Dayton, OH, for Plaintiffs.

Laurie J. Nicholson, Bruce MacNeil Allman, Thompson Hine & Flory LLP, Cincinnati, OH, for Defendant.

## DECISION AND ENTRY OVERRULING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. #16) AND SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. #30); JUDGMENT TO ENTER FOR DEFENDANT AND AGAINST PLAINTIFFS; TERMINATION ENTRY

RICE, Chief Judge.

The material facts of this case are not in dispute. On May 28, 1999, Ashleigh Szabo, an adult, was a passenger in an automobile driven by Celeste Kline. Due to her own negligence, Ms. Kline crashed the automobile. Ashleigh suffered serious brain stem injuries, resulting in paralysis. On the day of the accident, Ahsleigh's father, Plaintiff Ernest J. Szabo, Jr. ("Mr.Szabo"), was employed at Lexis–Nexis, an unincorporated division of Reed Elsevier, Inc. ("Reed Elsevier"), which itself is a Massachusetts corporation and a wholly-owned indirect subsidiary of Reed International PLC ("Reed International") and Elsevier NV. Ashleigh settled her claims with the insurer of Ms. Kline. She also settled with an insurer of Reed Elsevier, pursuant to an automobile liability policy held by that company.

This suit concerns a third insurance policy, issued by Defendant CGU International Insurance, PLC ("CGU") to Reed International, entitled Global Liability Policy ("CGU policy").[1] This was a sweeping commercial liability policy, the following aspects of which are pertinent to the Court's analysis:

1) Its coverage extended to the insured's liabilities "arising anywhere in the world," subject to certain express exclusions. (CGU policy at 2.)

2) The insured was expressly named as "Reed International plc., Elsevier NV and/or Subsidiary and Associated Companies." (*Id.* at 3.)

3) The "business" of the insured which CGU agreed to insure included all activities undertaken by the insured at any time. (*Id.*)

4) It allowed, *per the request* of the named insureds, for individuals of certain and defined classes to be included as insureds for coverage owing to legal liabilities in respect of which the aforementioned insureds would themselves have been covered. (*Id.* at 9–10.)

5) It provided for excess automobile liability coverage "arising out of the use by or on behalf of the Insured" in excess of $1,000,000. (*Id.* at 30.)

Mr. Szabo, in his capacity as guardian for his daughter, filed an action in the Montgomery County (Ohio) Court of Common Pleas against CGU, seeking uninsured/underinsured ("UM/UIM") coverage under this insurance policy. He joined himself to the action in his individual capacity, along with his wife Marsha (Ash-

---

1. A copy of the CGU policy was attached to the Plaintiffs' Complaint (attached to Doc. #1). The policy was in effect at the time of Ashleigh's accident. (*See* CGU policy at 3.)

leigh's mother; "Mrs. Szabo") and son Brent (Ashleigh's brother), seeking damages for loss of consortium. CGU removed the action to this Court (*see* Doc. # 1), which has jurisdiction pursuant to 28 U.S.C. § 1441 (removal jurisdiction) and § 1332 (diversity jurisdiction).

The gist of the Plaintiffs' argument is that Ohio contract law governs this case; that Mr. Szabo, as an employee of Lexis–Nexis, was insured under the CGU policy; that, under the law of Ohio as it existed at the time of Ashleigh's accident, she was insured under the CGU policy as his daughter; that, under the law of Ohio as it then existed, CGU's failure expressly to offer UM/UIM coverage when it issued the policy to Reed International gives rise to a finding that such additional coverage existed by operation of law; and that Ashleigh is therefore entitled to such UM/UIM coverage. Additionally, Mr. Szabo, Mrs. Szabo, and Brent Szabo, assert claims for loss of consortium.

CGU argues that English contract law applies,[2] that Mr. Szabo was not insured under the CGU policy, that Ashleigh was not insured under the CGU policy, and that even under Ohio law, the fact that neither Mr. Szabo nor Ashleigh was insured precludes a finding that Ashleigh is entitled to UM/UIM coverage. It argues further that Ohio does not recognize the loss of consortium claims asserted by the individual Plaintiffs.

The Plaintiffs' action was filed in Common Pleas Court on May 18, 2001. Three days later, CGU filed a parallel action against the Szabos in the High Court of Justice, Queen's Bench Division, Commercial Court of London, England, seeking a declaration that English law applies and that none of the Plaintiffs to the action before this Court are "insureds" under the CGU policy. In a February 19, 2002, Decision and Entry, this Court overruled CGU's Motion for Order of Abstention or, Alternatively, Order Staying Proceedings (Doc. # 10). (*See* Doc. # 25.)

Plaintiffs have filed a Motion for Partial Summary Judgment (Doc. # 16), in which they seek a judgment that they are entitled to UM/UIM coverage as a matter of law. They would have the Court leave issues of causation and damages to the trier of fact. (Doc. # 16 at 10.) For its part, CGU has filed a Motion for Summary Judgment as to all claims and issues (Doc. # 30). Extracting the gravamen of the parties' respective arguments, five questions are presented for the Court's consideration:

1) Does an action concerning the existence of UM/UIM coverage, where said action itself stems from an underlying act of negligence, sound in tort or contract, such that the Ohio choice-of-law principles relating to the one or the other apply?;

2) Does English law or Ohio law apply to the Plaintiffs' action herein?;

3) Is Ashleigh Szabo an insured under the CGU policy?;

4) Is Ashleigh entitled to UM/UIM coverage under Ohio Rev.Code § 3937.18 (Anderson 1996), pursuant to the rule announced by the Ohio Supreme Court in *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999), *superceded by statute*, Ohio Rev. Code § 3937.18 (Anderson Supp.2001)?;

5) Does Ohio recognize a claim for the loss of consortium of an adult daughter or sister?

---

**2.** While the parties dispute which substantive body of contract law applies, they do not dispute that the choice-of-law rules of Ohio are to be applied by this Court, sitting as it does in diversity, in settling the choice-of-law dispute. *See Wallace Hardware Co., Inc. v. Abrams*, 223 F.3d 382, 391 (6th Cir.2000).

As an additional matter, the Court understands that on July 8, 2002, the Queen's Bench Court issued a ruling in which it found, pursuant to English choice-of-law rules, that English law applied to CGU's action against the Szabos, and that none of them was an insured under the CGU policy. The Queen's Bench Court did not consider Ohio law or the effect of *Scott–Pontzer*. (*See* Judgment by Consent, Doc. # 35 at Ex. A.) On the basis of that ruling, CGU asks this Court to find that Plaintiffs herein are barred from continuing their litigation under the doctrine of *res judicata*. (Doc. # 35 at 2.) For their part, the Plaintiffs point out that the Queen's Bench Court expressly declined to rule on the dispute as a matter of Ohio law, and even suggested that they could return to this Court to seek relief thereunder. (Doc. # 37 at 3; Judgment by Consent ¶ 5.)

As a result of this ruling, a sixth question is presented for the Court's consideration: is the Plaintiffs' action herein barred by principles of *res judicata?*

■ Taking the sixth question, first, the Court declines to dismiss the Plaintiffs' action on principles of *res judicata*. That doctrine prohibits parties from relitigating a claim that was or could have been raised in a prior action in which there has been a final judgment on the merits. *See Pacific Employers Ins. Co. v. Sav–A–Lot of Winchester*, 291 F.3d 392, 399 (6th Cir.2002). Although the Court has previously noted that this action and the one before the Queen's Bench Court are parallel actions (*see* Doc. # 25 at 9), and although it may be the case that the doctrine of *res judicata* provides a proper ground for dismissing this action under these circumstances, the Court will not rest on that doctrine in this instance. In making this decision, the Court's primary concern is that the parties have not submitted anything more than cursory arguments on this recently developed issue, and it is reluctant to make a threshold ruling on the basis of what amounts to slightly more than two, double-spaced, typed pages of combined argument. (*See* Doc. # 35 at 2–3; Doc. # 37 at 3–4.) The Court believes that the complexity of the issue of *res judicata*, considered under these circumstances, warrants more attention from the parties if the Court is to consider its application. However, because the Court is prepared to rule on the merits of Plaintiffs' claims, as stated under Ohio law, it believes that resources are better conserved by so ruling, and not delaying the matter for further briefing on the question of *res judicata*.

Turning, then, back to the five questions raised in the Cross Motions for Summary Judgment, the Court finds that it need not ponder the first two questions, which concern the choice-of-law issue. The entirety of the Plaintiffs' cause of action is based on Ohio law; they make no alternative claim under English law. As such, the formal character of the Plaintiffs' action, be it one in tort or contract, is irrelevant, given that the analytical framework for addressing such is settled. Accordingly, because the Court finds, for the reasons set forth below, that none of the Szabos, including Ashleigh, is entitled to relief under Ohio law, it may limit its analysis to questions three, four, and five, as there is no need to contemplate a theoretical claim under English law (which would, in any event, only serve to duplicate, at this point, the completed efforts of the Queen's Bench Court).

As the facts are not in dispute, summary judgment is the appropriate means of disposition.

## I.  *Standards Governing Motions for Summary Judgment*

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) ("The moving party has the burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law, Fed.R.Civ.P. 50). *Street v.*

*J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir. 1994)("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to

the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), cert. denied, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Sys., Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992)("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## II. *Anaylsis*

At the time of Ashleigh Szabo's accident, Ohio mandated that all automobile liability insurers offer an insured the opportunity to purchase UM/UIM coverage. *See* Ohio Rev.Code § 3937.18 (Anderson 1996). Generally speaking, uninsured motorist coverage ("UM coverage") provides an insured driver with an amount of coverage equivalent to her own liability coverage in the event she is injured by another driver who is both legally liable to her and without liability insurance of his own. Underinsured motorist coverage ("UIM coverage"), in turn, and again generally speaking, provides an insured

driver with an amount of coverage equivalent to *the difference between* that amount which she would have received had another driver, who is legally liable to her, been uninsured, and that amount which she actually received under that other driver's liability insurance policy. In other words, an underinsured motorist is insured, just not as much as she should be, and the purpose of underinsured coverage is to guarantee that drivers injured by such motorists are not left with something less than they would have been had the at-fault motorist been uninsured. *See Clark v. Scarpelli*, 91 Ohio St.3d 271, 744 N.E.2d 719, 724 (2001).

Several watershed holdings came out of the Ohio Supreme Court's decision in *Scott–Pontzer, supra*. *First*, the Ohio Supreme Court held that where an insurance policy issued to a corporate entity defined the insured as "you," "you" was an ambiguous term, and could be interpreted reasonably to include the corporate entity's employees. In finding that such an ambiguity existed in the word "you," the Court noted that § 3937.18 was enacted "to protect persons, not vehicles," that "a corporation can act only by and through real live persons," and that "a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle." 710 N.E.2d at 1119. *Second*, because it found no language in the policy at issue expressly conditioning coverage upon a showing that the insured be injured in the course of his employment in order to invoke the policy, it held that such a condition precedent did not exist. *See id.* at 1120. *Third*, and finally, following its precedent in *Gyori v. Johnston Coca–Cola Bottling Group*, 76 Ohio St.3d 565, 669 N.E.2d 824 (1996), it construed § 3937.18 to imply the existence of UM and/or UIM coverage into any automobile insurance policy in the event the insurer had not

actually made an offer of such to the insured.[3]

The holding of *Scott–Pontzer* was extended in logical fashion in *Ezawa v. Yasuda Fire & Marine Ins. Co. of America*, 86 Ohio St.3d 557, 715 N.E.2d 1142 (1999). The policy at issue in that case expressly extended coverage to family members of insured individuals.[4] Finding as it had in *Scott–Pontzer* that the policy's coverage, which defined the insured as "you," could not be limited to the corporate entity which actually held the policy, but must extend to that entity's individual employees, the Ohio Supreme Court summarily held that the employee's injured son was likewise covered. 715 N.E.2d at 1143.

Section 3937.18 of the Ohio Revised Code was subsequently re-written, but as its amended form has an effective date of October 31, 2001, it is the earlier version, as was construed in *Scott–Pontzer*, that governs herein, assuming Ohio law applies. *See Ross v. Farmers Ins. Group*, 82 Ohio St.3d 281, 695 N.E.2d 732, 736 (1998) (stating that contractual rights are to be interpreted with reference to the statutory law in effect at the time the parties contracted).

It is both clear and undisputed that the CGU policy contains an excess automobile liability provision and that in issuing this policy CGU did not offer Reed International the option of purchasing UM/UIM coverage. Additionally, although the CGU policy was negotiated and issued in England, there is authority in Ohio for the proposition that as long as an insured's vehicle is registered and principally garaged in Ohio, former § 3937.18 required automobile liability insurers to have offered UM/UIM coverage, even if the liability policy was not delivered or issued in Ohio. *See Henderson v. Lincoln Nat'l Speciality Ins. Co.*, 68 Ohio St.3d 303, 626 N.E.2d 657 (1994).

■ Of course, CGU disagrees that Ohio law is applicable at all, and contends that the points raised in the above paragraph are immaterial. That being the case, there are two alternative bases on which the Court can address the merits of this case. Under one approach, it could turn initially to a choice-of-law analysis. If it did so, and it were to find that CGU is correct that English law governs, then the Plaintiffs' action would have to be dismissed, given that they stated no alternative claim under English law. Under a second approach, the Court could turn immediately to the merits of the Plaintiffs' analysis of Ohio law. If it found CGU's argument on this point to be correct,[5] then again, summary judgment for CGU would be proper. As neither approach requires the Court to address a jurisdictional or constitutional question,[6] either would be

---

**3.** In fact, there were two policies at issue in *Scott–Pontzer*, a regular liability policy, which provided for UIM coverage, and an umbrella/excess insurance policy, which provided for neither UM nor UIM coverage. 710 N.E.2d at 1117. It was only the issuer of the umbrella policy which had failed to offer UM/UIM coverage. *Id.* at 1120.

**4.** This was also the case in *Scott–Pontzer*, but that portion of the policy was not then at issue.

**5.** CGU has addressed both of the approaches outlined herein by the Court, to wit, it has

argued that it is entitled to summary judgment because English law, not Ohio law, governs, but that it would be entitled to the same even if the Court were to find that Ohio law applies.

**6.** If subject matter jurisdiction is in question, it must be addressed first. *See Douglas v. E.G. Baldwin & Assoc., Inc.*, 150 F.3d 604, 606–07 (6th Cir.1998). Where a case can be disposed of on non-constitutional grounds, federal courts are to avoid the constitutional question. *See Spector Motor Service, Inc. v. McLaughlin*, 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101 (1944).

appropriate. As a matter of judicial efficiency, the Court finds it is more efficient to proceed under the second analytical approach. To begin with, the Court is not inclined to duplicate the efforts of the Queen's Bench Court, even given the fact that its inquiry would proceed under a different choice-of-law rule. Furthermore, even if it were to address the choice-of-law issue, and find that English law should apply, it would nevertheless find itself, to be fair and complete in its analysis, obliged to address the Plaintiffs' theory of recovery under Ohio law.[7] For both of these reasons, resources are better spent by addressing the heart of the Plaintiffs' argument from the outset.[8]

■ For several reasons, the Court finds that the Plaintiffs have failed to show a genuine issue of material fact that Ashleigh is entitled to UIM coverage under Ohio Rev.Code § 3937.18 (Anderson 1996), as construed in *Scott–Pontzer* and *Ezawa.* The Court will continue its analysis by highlighting a few more of the salient facts of the *Scott–Pontzer* decision, and then address why it and *Ezawa* are inapposite to the case at bar.

Christopher Pontzer was an employee of Superior Dairy, Inc ("Superior Dairy"). *Scott–Pontzer*, 710 N.E.2d at 1117. While driving a car owned by his wife, he was hit and killed by a vehicle driven by Troy Taylor. *Id.* At the time of the accident, Pontzer was not within the scope of his employment. Taylor's liability insurance was capped at $100,000 per person; $300,000 per accident. Pontzer's wife, Kathryn Scott–Pontzer, sought UIM coverage under two policies owned by Superior Dairy. The first policy ("Liberty Fire policy") under which she sought coverage contained a UIM provision. The liability provision expressly named Superior Dairy as the insured. The pertinent part of the UIM provision read:

B. Who Is An Insured.

1. You.

2. If you are an individual, any family member.[9]

(*Id.* at 1118.) In other words, family members of insureds were also insured under the UIM provision. The second policy ("Liberty Mutual policy") under which she sought coverage was an umbrella/excess insurance policy. It did not expressly provide for UIM coverage.

■ As noted above, the Ohio Supreme Court found that it was reasonable to think that the UIM provision of the Liberty Fire policy, to be effective, was intended to

7. Obviously, if the Court were to agree with the Plaintiffs on either their choice-of-law or Ohio law argument, it would be required to address the other, given that both issues were raised defensively by CGU. By contrast, if the Court were to find that the Plaintiffs' theory of recovery is without merit under Ohio law, it would have no obligation to address the question of whether English law should actually govern, given the fact that the Plaintiffs have not asserted an alternative claim thereunder.

8. For purposes of making a complete record, and without regard to the recent decision from the Queen's Bench Court on the related litigation initiated by CGU, the Court will remark herein that for the reasons stated in

*Ohayon v. Safeco Ins. Co. of Illinois,* 91 Ohio St.3d 474, 747 N.E.2d 206 (2001), *Miller v. State Farm Mut. Auto. Ins. Co.,* 87 F.3d 822 (6th Cir.1996), *Nationwide Mut. Ins. Co. v. Ferrin,* 21 Ohio St.3d 43, 487 N.E.2d 568 (1986), and *Gries Sports Enter., Inc. v. Modell,* 15 Ohio St.3d 284, 473 N.E.2d 807 (1984), it finds CGU's argument as to the choice-of-law issue well taken, and finds that English law is the correct law under which any genuine CGU policy dispute should be analyzed.

9. This was boilerplate language for automobile insurance policies in Ohio, be they issued to families or corporations. *See King v. Nationwide Ins. Co.,* 35 Ohio St.3d 208, 519 N.E.2d 1380, 1381 (1988).

insure actual individuals, 710 N.E.2d at 1119, and that in the absence of a *more* reasonable alternative interpretation as to whom "you" included, it must have included the employees of Superior Dairy.[10] With regard to the Liberty Mutual policy, it held that because Liberty Mutual failed to offer UIM coverage,[11] such extended by operation of law. *Id.* at 1120. *See also Gyori,* 76 Ohio St.3d 565, 669 N.E.2d 824.

For the following reasons, this Court finds that, *first,* Mr. Szabo was not named under the CGU policy, *second,* because he was not named for purposes of liability coverage, UIM coverage cannot extend by operation of law under the rule of *Scott–Pontzer,* and *third,* even if Mr. Szabo were named in the CGU policy for purposes of liability coverage, such that UIM coverage, which was not offered, must extend by operation of law, his daughter Ashleigh was not named, and therefore was not covered thereunder.

The holding in *Scott–Pontzer* gives rise to two questions: 1) was the plaintiff named, either expressly or by implication, in the automobile liability policy at issue, which is owned by a corporate entity?; and 2) if he was not named, does the fact that the insurer failed to offer his corporate employer (or his family member's employer), which owns the liability policy, UM/UIM coverage necessitate that such coverage extend not only to the corporation, but to the corporation's employees? Addressing the first question first, the Court finds that Mr. Szabo was not named under the CGU policy. His relationship to the CGU policy differs from that which existed between Pontzer and the policies at issue in *Scott–Pontzer* in that under no reasonable construction of the CGU policy could it be found that Mr. Szabo was contemplated as an insured. As noted, the insureds under the CGU policy were Reed International, Elsevier NV and/or any subsidiary and associated companies. In addition, *at the request of those insured entities,* additional persons could be named as insureds under the liability provision. (*See* CGU policy at 9–10.) The Court need not enumerate what categories of persons were contemplated as potential insureds because it is undisputed by the Plaintiffs that none of the named insureds ever requested that any such individual, let alone Mr. Szabo, be added. (*See* McCormack Aff., Doc. #30 at Ex. 7, ¶1.) In other words, the corporate entities named as the insureds continued at all times to be the

---

10. The defendant insurance companies argued that by inserting the conditional clause, "if you are an individual, any family member," the policy made it clear that the "you" in the first instance must be interpreted to contemplate something other than an individual, to wit, Superior Dairy, and that because Superior Dairy was the only entity actually named, the policy could not be interpreted as contemplating any insured other than it. 710 N.E.2d at 1119. Because the Court found that the alternative construction, allowing "you" to contemplate individuals in the first instance, was also reasonable, it adopted that construction, given the canon of statutory construction that insurance contracts should be construed most favorably to the insured. *Id.* Its invocation of this canon of construction is suspect. The canon is intended to inure to the benefit of an insured, which in that case was Superior Dairy, in the event of a dispute between it and the insurer. As the Ohio Supreme Court used it, however, it inured to the benefit of a third-party. In other words, the canon was used for more than just deciding an ambiguity in favor of a known insured; it was used to decide an ambiguity as to whether that party was even an insured in the first instance. Such is a novel use.

11. Under Ohio Supreme Court precedent, the burden of showing that UM and/or UIM coverage was offered and rejected falls on the insurer. *See id.* at 1120; *Gyori,* 669 N.E.2d at 827.

only named insureds.[12] Given that fact, the ambiguity which was found to exist in *Scott–Pontzer*, arising on account of the use of the term "you" in the Liberty Fire policy to define the insured for UIM coverage purposes, simply does not exist in this case.[13]

With respect to the Liberty Fire policy at issue in *Scott–Pontzer*, the "you" language was only included in the UIM provision; not in the liability provision. Furthermore, in interpreting who was insured under the Liberty Fire policy, the Ohio Supreme Court *only addressed who was insured under that UIM provision*, which contained the "you" definition of insured.[14] The Court had no occasion to express its opinion as to whether the liability provision, which did not include the "you" definition of insured, and named only Superior Dairy, extended to Pontzer. In other words, the Court held that "you" was ambiguous, and could reasonably contemplate Superior Dairy's employees under the

UIM provision; it did not address whether "Superior Dairy," as the sole named insured under the liability provision, was an ambiguous term, or whether Superior Dairy could not be insured by itself, to the exclusion of its employees, such as Pontzer.[15]

■ Despite the Plaintiffs' representations to the contrary, to say that the Ohio Supreme Court held that where a corporation is insured, and *where there is no ambiguity* that the corporate entity is the only named insured, the corporation's employees must also be regarded as insured is to read too much into its decision, something which a federal court sitting in diversity should be loathe to do. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir.2001) (stating that in diversity cases, the federal courts must apply state law in accordance with the then-controlling decision of the highest state court). As the Ohio Supreme Court has stated more recently, "[n]othing in R.C. 3937.18 ... pro-

**12.** For some unknown reason, the Plaintiffs propose that the Court refer to language contained in the liability coverage provision of the CGU policy for purposes of finding the definition of "who is an insured." That provision, under the title "Public Liability," states that coverage will exist for the "Bodily Injury of any person except that arising out of and in the course of his employment by the Insured under a contract of service or apprenticeship." (CGU policy at 4.) Their argument is not well taken. This provision does not define the insured; it defines one particular form of liability for which the insured, *defined elsewhere*, shall be covered.

**13.** The Plaintiffs state: "As the Ohio Supreme Court stated in *Scott–Pontzer*, an inherent ambiguity exists when an insurer lists a business entity as a named insured in an automobile insurance policy." (Doc. # 32 at 11.) This statement is false. The *Scott–Pontzer* Court held only that in defining the insured as "you" in the UIM provision endorsement of the Liberty Fire policy, an ambiguity was created as to the meaning of that term, and that term alone. The holding may not be read for

the expansive generalizations suggested by the Plaintiffs.

**14.** That the *Scott–Pontzer* Court analyzed the definition of "insured" in the context of a UIM provision, and this Court is called upon to analyze the same in the context of a liability provision, is a distinction without a difference. Regardless of the formal character of the insurance provision at issue, the question is the same: was the individual seeking coverage a named insured? Plaintiffs' argument that Mr. Szabo was named by operation of law in the UIM provision, irrespective of whether he was named in the liability provision, will be the focus of the second part of the Court's analysis.

**15.** By recognizing that the Ohio Supreme Court found the term "you" to be ambiguous, the Court by no means intends to suggest that it agrees with its reasoning. *See, e.g., Gibson v. New Hampshire Ins. Co.*, 178 F.Supp.2d 921, 922 n. 2 (S.D.Ohio 2001) (Graham, J.) (finding the Ohio Supreme Court's rationale on this point "mysterious").

hibits the parties to an insurance contract from defining who is an insured person under the policy." *See Holliman v. Allstate Ins. Co. Corp.*, 86 Ohio St.3d 414, 715 N.E.2d 532, 535 (Appendix) (Ohio 1999) (adopting as its own the holding of the intermediate appellate court). What is more, it would render superfluous the entire portion of the *Scott–Pontzer* Court's opinion regarding its interpretation and construction of "you." Had the Ohio Supreme Court intended to say what the Plaintiffs now contend it said, the Court could have ruled more simply and succinctly that where a corporate entity is the named insured, liability and UM/UIM coverage automatically extend to its employees. The Court did not say this. Furthermore, in interpreting the term "you," as it was used to define the insured, to include employees, the *Scott–Pontzer* Court merely pointed out that its interpretation was one, but not the only, way to interpret the language used in the Liberty Fire policy. Its analysis was triggered by the ambiguity it found in the word "you," as that word was used to define the insured. The result reached therein should be used as an analytical framework when an ambiguity exists; where such an ambiguity does not exist, *Scott–Pontzer* is inapplicable, and it should not be used to fabricate an ambiguity in the first instance. *See Holliman*, 715 N.E.2d at 532 ("Where the plain and ordinary meaning of the language used in an insurance policy is clear and unambiguous, a court cannot resort to construction of that language."). For the reasons stated above, the CGU policy unambiguously defines who is insured, that definition does not include Mr. Szabo, and the *Scott–Pontzer* framework is therefore inapplicable.

The Plaintiffs reiterate the notion that former § 3937.18 "was designed ... to protect persons, not vehicles," *Scott–Pontzer*, 710 N.E.2d at 1119 (citing *Martin v. Midwestern Group Ins. Co.*, 70 Ohio St.3d

478, 639 N.E.2d 438 (1994)), and insist that despite the difference in wording, the named entities in the CGU policy are no more able to "occupy an automobile, suffer bodily injury or death, or operate a motor vehicle" than the corporate entity in *Scott–Pontzer*, Superior Dairy. Individuals, they argue, not corporations, must be seen as the true insureds under the CGO policy. "According to *Scott–Pontzer*," the Plaintiffs argue, "when an insurance company claims to provide insurance coverage to a corporation, as in the instant case, the insurance company, in truth, is providing no coverage whatsoever to that category of insureds unless the 'Corporation' is reasonably interpreted to mean corporate employees." (Doc. # 32 at 12.)

For the reasons already given, this latter proposition is a mischaracterization of the *Scott–Pontzer* holding. Furthermore, the CGU policy was not the standard automobile liability insurance policy that was at issue in that case. It was an omnibus policy that protected the insured corporations against a whole host of commercial liabilities, excess automobile liability being but one of many, and it would be fallacious to suggest that a corporation cannot be held accountable, in its own name, for such liabilities; the suggestion cuts at the fundamental undergirding of corporate law. *See, e.g.*, Ohio Rev.Code § 1701.13 (stating that in Ohio a corporation can be sued). Indeed, with respect to some of the liabilities contemplated by the CGU policy, it would be impossible to hold an individual liable. For example, only the corporation could be held liable for its contractual agreements. Thus, the Contractual Liability provision (*see* CGU policy at 22) can only apply to one of the named corporate entities. The Plaintiffs' argument would have the Court read the CGU policy as inclusive of an ambiguity with respect to some sections (e.g., the excess automobile

liability provision) but not to others (e.g., the contractual liability provision). Taken by itself, it would be absolutely impermissible to think that a corporation that procured a contractual liability policy in its name alone intended to incorporate, by implication, liability coverage for individual employees. Since that is the case, there would be no reason to think that the same corporation intended a different result where it procured an automobile liability policy in the same transaction. By invoking the non-controlling dicta of *Scott–Pontzer*, the Plaintiffs are trying to enlarge the reach of that case and impress upon the CGU policy an ambiguity which simply does not exist.

As a final observation on this particular issue, the fact that the CGU policy expressly contemplates when and how additional persons are to be added as insureds makes it patently clear that employees such as Mr. Szabo were not contemplated in the first instance. That provision states:

*Interpretation*

*Additional Persons Insured*

1 The Insured shall include if the Insured specified in the Schedule so requests, against legal liability in respect of which the Insured specified in the [S]chedule would have been entitled to Indemnity under this Policy

a i any director or partner of the Insured

ii any person employed by the Insured under a contract of service or apprenticeship

iii any Person Working For The Insured (as defined in clause 2 below) if the Insured specified in the Schedule would have been entitled to indemnity under this Cover

iv any officer member employee or paid or voluntary helper or instructor of the Insured's canteen social sports or welfare organizations or sponsorship galas first aid fire or ambulance or security services in his respective capacity as such

b in the event of the death of the Insured any personal representative of the Insured in respect of liability incurred by the Insured

c for the purposes of Particular Clause No. 20 [16] the partner of any person specified in 1a above

*Persons Working for the Insured*

2 For all the purposes of this Policy other than clause 1 a ii above

a labour masters and persons supplied by them

b persons employed by labour only subcontractors

c self employed persons

d drivers and/or operators of plant hired or loaned to the Insured

e persons gaining work experience

f any person hired or borrowed by the Insured

g voluntary workers

h any person supplied to the Insured under the Community of Offenders Act 1978 or the Community of Offenders (Scotland) Act 1979 or any similar Act

i any prospective employee who is being assessed by the Insured as to their suitability for employment

j former employees retained on a temporary consultancy basis

16. Clause No. 20 specifies that the liability provision applies to "any person specified in Interpretation 1a or his spouse whilst outside his country on the Business of the Insured...." (CGU policy at 32.)

working for the Insured in connection with the Business shall be deemed to be employed by the Insured under a contract of service or apprenticeship

(CGU policy at 9–10.)

Not only is it uncontroverted that the corporate insureds never invoked this provision to add any of the potential insureds defined therein, but Plaintiffs have not offered evidence that Mr. Szabo, in his position with Lexis–Nexis, even came within the definition of any such individual, and it is clear that regular employees were not contemplated as potential insureds. By contrast, it is equally clear that directors and partners of the insureds were. It would turn reason on its head to find that directors and partners, and every other person which the company defined as a potential insured with particularity, had to be added to the CGU policy by special request in order for their individual liabilities to be covered, but that the individual liabilities of regular employees were covered all along. *See, e.g., Westfield Ins. Co. v. Galatis,* 2002 WL 500251, at *2 (Ohio Ct.App. April 3, 2002) (holding that where a corporate liability policy contemplates coverage for specific individuals, the ambiguity of the term "you," where "you" is the insured, is removed, and other individual employees cannot avail themselves of coverage under the rule of *Scott–Pontzer* ); *see also White v. American Mfrs. Mut. Ins. Co.,* 2002 WL 1833345, at *2–4 (Ohio Ct.App. Aug.9, 2002) (following *Westfield,* and holding that the contemplation of specific individual insureds, namely company officers and directors, negates the *Scott–Pontzer* ambiguity); *but see Still v. Indiana Ins. Co.,* 2002 WL 358652, at *3 (holding, without analysis, that an endorsement naming two individuals as the named insureds did not negate the *Scott–Pontzer* ambiguity). Furthermore, as pointed out by the Second District Court of Appeals of Ohio, in distinguishing the contra holding of the Fifth District in *Still, supra,* if *Scott–Pontzer* applies every time a corporation names itself as an insured along with a certain class of individuals, "there is no way for a corporation to limit coverage to itself and only a few employees." *White,* 2002 WL 1833345, at *4.

Turning to the second question, because Mr. Szabo was not an insured, UIM coverage cannot extend by operation of law. As the Ohio Supreme Court stated in *Scott–Pontzer,* "[i]f we find Pontzer was not an insured under the policies, then our inquiry is at an end." 710 N.E.2d at 1118. The Plaintiffs argue that *Scott–Pontzer* is a bifurcated holding, and that the holding that UIM coverage extends to an insured corporation's employees as a matter of law, where the insurer has not made an express offer of such, operates by force independent of a finding that the individual employee seeking benefits thereunder was named or contemplated as an insured in the underlying liability policy. This cannot be correct.

The Plaintiffs' argument is not without some merit, given the distracting internal inconsistencies in the Ohio Supreme Court's opinion. On the one hand, there is the statement to the effect that if an individual is not an insured, then there is no need to inquire any further into the rights afforded under the policy at issue. *See id.* On the other hand, two pages later in its opinion, the Court observed that the Liberty Mutual policy "did not contain an uninsured motorist coverage form that defined insureds for purposes of underinsured motorist coverage." *Id.* at 1120. Then, without reference to whom the Liberty Mutual policy named as the insured for purposes of its excess liability coverage provision, the Court held that UIM coverage extended as a matter of law not only to Superior Dairy, which was consistent

with its precedents, but also to Pontzer. This latter fact is at first glance beguiling, because in reality, as noted above, there are two distinct questions that need to be asked: 1) who is named in the liability policy?; and 2) did the insurer offer UIM coverage? With respect to the Liberty Mutual umbrella policy, the Ohio Supreme Court glossed over the first question.

The Liberty Mutual policy, unlike the Liberty Fire policy, did not contain any language defining the insured as "you," or the language extending coverage to family members in the event "you are an individual." As has already been discussed, the Ohio Supreme Court, in interpreting the Liberty Fire policy, only addressed whether "you" was ambiguous as used in the UIM provision, and did not address whether "Superior Dairy," as the sole named insured under the liability provision, was an ambiguous term, or whether Superior Dairy could not be insured by itself, to the exclusion of its employees. The Plaintiffs would have this Court find that the Ohio Supreme Court did just that in construing *the Liberty Mutual policy*, i.e., that it held that a corporation's employees will always be covered under a policy that clearly and expressly names only the corporation itself, and that the failure to offer UIM coverage to the corporation automatically gives rise to such as a matter of law, to the benefit of its employees.

It was well settled in Ohio, by the time of *Scott–Pontzer*, that a failure to offer UM/UIM coverage to the entity insured under the liability provision gave rise to the existence of such as a matter of law, but the Court cited no precedent support-ing a finding that the failure to offer such coverage must result in it extending such to all employees of an insured corporation, even where the corporation itself is the *only* insured (and the term "you," or any other ambiguous term, is not used).[17]

■ *Scott–Pontzer*, as it concerned the construction of the Liberty Mutual policy, can thus be read in one of two ways. *First*, as the Plaintiffs suggest, it can be read for holding that not only will UIM coverage extend as a matter of law where none is expressly offered, but it will also extend to all of a corporate entity's employees where the corporation itself would otherwise be the sole insured entity. *Second*, it could be read for the more limited holding that UIM coverage will extend to the named insured as a matter of law where none is expressly offered; the fact that the Ohio Supreme Court recognized Pontzer's coverage under the Limited Mutual policy could then be understood as based on an assumed finding that he was already covered under the liability provision of the umbrella policy (the Liberty Mutual policy), even though the Court did not clearly articulate this.

Justice Cook, in dissent, was apparently concerned that the first reading is what the majority had accomplished, *see id.* at 1122 (Cook, J., dissenting), but this Court does not believe that this is right, and concludes that the holding did not go so far.

*First*, in remarking that a finding that "Pontzer was not an insured under the *policies* " would cut short his hopes for

---

**17.** District Judge Graham, of the Southern District of Ohio, expressed similar confusion on this point in *Gibson*, 178 F.Supp.2d at 923. On the other hand, prior constructions of the boilerplate insurance language defining the insured as "you" were known to the Ohio Supreme Court. *See, e.g., King*, 519 N.E.2d at 1384 (finding ambiguity in automobile liability policy where the literal finding that "you" and "your" referred only to the insured corporate entity produced an absurd result vis-a-vis other language in the policy referring to "relatives living in your household").

recovery, the Ohio Supreme Court referred to "policies" in the plural, and the Liberty Fire and Liberty Mutual policies were the only two at issue. Clearly, the Court recognized that coverage *of any kind,* be it that which exists in fact or that implied by law, cannot extend unless an individual is first expressly or impliedly named as an insured. *Second,* it expressly recognized that the Liberty Mutual policy, to the extent it provided excess *liability* coverage, "did restrict coverage to employees acting within the scope of their employment." *Id.* at 1120. Therefore, despite Justice Cook's concern that Superior Dairy was the only insured under the Liberty Mutual policy, the majority obviously made a finding to the contrary.[18] This fact is illuminated by the unpublished opinion issued by the intermediate appellate court in that case. The decision of the Fifth District Court of Appeals reveals a very relevant fact: coverage under the Limited Mutual policy extended to "[y]our employees ... for acts within the scope of their employment." 1998 WL 516303, at *2 (Ohio Ct.App. Jan. 20, 1998). This is significant, as it reveals that the Ohio Supreme Court did not, in fact, merely assume that Pontzer was covered under the liability provision; he was so covered as a matter of fact. Therefore, given its precedent on the issue of UIM coverage extending by operation of law where none was expressly offered (i.e., *Gyori* ), it was unremarkable that the Court found Pontzer, too, to be covered under the *de jure* UIM coverage of the Liberty Mutual policy. To be sure, by deleting the condition precedent included in the liability provision that a covered employee must have acted in the scope of his employment, the Court recognized broader UIM coverage than Pontzer had liability coverage, but this was because

Liberty Mutual had not affirmatively offered and thereafter limited such coverage on its own accord. This particular aspect of the Ohio Supreme Court's holding was consistent with its precedents and not nearly so dramatic as Justice Cook may have understood it at the time, or as the Plaintiffs promote it herein.

It is, in short, unreasonable to read *Scott–Pontzer* for the proposition that an employee who is not named, either expressly or impliedly, under her employing corporation's automobile liability policy, must nevertheless benefit from *de jure* UIM coverage on account of the insurer not having offered such to the corporate employer. Because individual employees did not have individual liability coverage under the CGU policy, it would be erroneous to find that they are entitled to UIM coverage thereunder as a matter of law.

For the aforementioned reasons, the Court finds that Mr. Szabo was not named in, and was not insured by, the CGU policy.

■ A second feature which distinguishes the facts of this case from those at issue in *Scott–Pontzer* and *Ezawa* is that there is nothing in the CGU policy which would indicate that relatives of employees, even if an employee such as Mr. Szabo were covered, were themselves covered. To clarify *Ezawa,* it need only be pointed out that it extended *Scott–Pontzer* by a simple syllogism. *First,* Scott–Pontzer, which concerned an employee of the insured corporate entity, stands for the proposition that where the insured is defined as "you," in the absence of anything more definite, "you" includes the corporate entity's employees. *Second,* the policy at issue in *Ezawa* (which was not reprinted in the Ohio Supreme Court's opinion, but

---

18. The fact that the Court referred to this fact without elaboration exposes the shortcomings

of eliciting facts from a opinion written by the second reviewing court.

which was reprinted in the intermediate appellate court's opinion), contained the identical boilerplate language of that at issue in *Scott–Pontzer*: the insured was defined as "you," and where "you" was an individual, the insured included "any family member." 1998 WL 353871, at *2 (Ohio Ct.App. June 30, 1998).[19] *Third,* the injured party in *Ezawa* was the minor child of a man who was situated to his employer's automobile insurance policy in the same fashion as Pontzer had been to Superior Dairy's. Ergo, after *Scott–Pontzer*, there was no question that an employee's minor child, a "family member," was covered, given the identical terminology.

Herein, that language, to wit, "you," and "if you are an individual, any family member," is not an issue; it is not the language used by the CGU policy. Nevertheless, the Plaintiffs, relying on the more recent authority of several unpublished decisions from lower courts in Ohio, contend that the "family member" language at issue in *Scott–Pontzer* and *Ezawa* was not determinative, and that the extension of UM/UIM coverage to family members of *de jure* insured employees is also absolutely required by operation of law. It is an untenable argument.

The first case on which the Plaintiffs rely, *Brodbeck v. Continental Casualty Company,* 2002 WL 192060 (Ohio Ct.App. February 8, 2002), is factually distinguishable, and the statements of law on which the Plaintiffs rely have been misunderstood by them. The plaintiff in *Brodbeck,* Kenneth Brodbeck, was himself an employee of the insured entity under whose

insurance policy he sought coverage, and the court had no occasion to decide the issue raised by the Plaintiffs herein.[20] In deciding the case, the Sixth District Court of Appeals, applying Ohio Supreme Court precedent, reached the correct and unremarkable result, the details of which are irrelevant to the case at bar. The language from that opinion on which the Plaintiffs rely is the following:

> Because the umbrella policy [at issue in *Scott–Pontzer*] was not intended to apply to UM/UIM coverage, and because UM/UIM coverage arose by operation of the law due to Liberty Mutual's failure to offer such coverage to Superior Dairy, the court held that Pontzer's wife was entitled to UIM benefits under the umbrella policy.

2002 WL 192060, at *6. All this statement reflects is the fact that Pontzer himself was dead and his wife, suing in her capacity as his surviving spouse, was entitled to collect the benefits *for which he, as the insured, was entitled.* Scott–Pontzer herself was not insured, and nothing in the Ohio Supreme Court's decision, or the *Brodbeck* decision, instructs otherwise.

The Plaintiffs also direct the Court's attention to two Common Pleas Court decisions. *Hodnichak v. Gray,* Case No. CV 1999–09–3844 (Summit County Ct. C.P. Dec. 14, 2001), can certainly be read to support the Plaintiffs' position, but the opinion is compromised by its confusing train of reasoning, and the fact that it concluded that the wife of an insured employee is insured herself without reference

---

**19.** The intermediate appellate court, the Tenth District Court of Appeals, issued its decision a full year before the Ohio Supreme Court decided *Scott–Pontzer* on June 23, 1999.

**20.** Although the plaintiff was joined in the suit by his mother, there is nothing in the court's

discussion indicating that she was, in any fashion, asserting her own claim to insurance benefits as an insured. Indeed, the court stated that "[a]ppellants claimed that *Brodbeck* was insured [under the policies]." 2002 WL 192060, at *1 (emphasis added).

to any supporting authority.[21] Ultimately, it is not persuasive. Finally, *Panning v. Ohio Gov't Risk Mgt. Plan,* Case No. CI00–3915 (Lucas County Ct. C.P. March 8, 2002), is equally unpersuasive. Therein, both spouses sought coverage under automobile liability policies issued to the wife's employer. In reaching the question of whether the non-employee spouse was covered, the court relied solely upon *Brodbeck* and Hodnichak, in holding that *Ezawa* does not require that a family member be specifically or generally named in the policy at issue in order for it to be found that family members are insured. Given the fact that *Brodbeck* intimates no such conclusion (*see supra* note 20), and the fact that the Hodnichak court issued its decision, even in the words of the *Panning* court, "[w]ithout citing specific cases," the *Panning* decision is itself of little weight.

In any event, the result in *Hodnichak* and *Panning* has been rejected by other Ohio courts that have ruled on the issue. *See Allen v. Johnson,* 2002 WL 1453790, at *5–6 (Ohio Ct.App. July 3, 2002) (holding that absence of "family member" coverage language in policy precluded coverage for employee's relatives); *Devore v. Richmond,* Case No. 99 CV 527 (Wood County Ct. C.P. July 27, 2001) (same), *aff'd* 2002 WL 1781220 (Ohio Ct.App. Aug. 2, 2002); *Fonseca v. Fetter,* 2001 WL 1860380, at *7 (Ohio Misc. June 15, 2001) (same); *see also Gibson v. New Hampshire Ins. Co.,* 178 F.Supp.2d 921, 924 (S.D.Ohio 2001) (holding that because the UIM provision did not

contain the same "family member" language as the underlying liability provision, insured's family members were not covered under the UIM provision). This Court finds the logic employed by this latter set of cases to be more sound.

The Plaintiffs argue that because the *Ezawa* decision was summarily issued, and did not discuss the Ohio Supreme Court's rationale for extending UM/UIM coverage to the family member who was the plaintiff therein, it would be inappropriate to attempt to divine its rationale. In other words, because the Ohio Supreme Court did not expressly hold that an actual reference to family-member coverage is required, such a requirement should not be presumed. The Court disagrees: common sense is not to be left at the door to the Courthouse. In *Ezawa,* at the intermediate appeals level, the Tenth District Court of Appeals of Ohio held that the language defining an insured as "any family member," where "you," the insured, *was an individual,* indicated that "you" need not always be an individual. Therefore, given that the corporate entity was the only named insured, it held that the corporation was the only "you" contemplated by the policy, and that individual employees were not insured thereunder. Given that this was the very argument rejected in *Scott–Pontzer,* it was a *fait accompli* that the Tenth District's ruling in *Ezawa* would also be reversed, and there was no need to elaborate on the reasoning.

21. The court cited two cases, but neither supports its holding. In *Sexton v. State Farm Mut. Auto. Ins. Co.,* 69 Ohio St.2d 431, 433 N.E.2d 555 (1982), the Ohio Supreme Court held that an insured father was entitled to invoke his UM coverage on account of his minor daughter having suffered bodily injury and death. The Court did not find that the daughter was insured, merely that her own "bodily injury" gave rise to the father's claim for his pecuniary losses, to wit, his financial

outlays owing to her injury and death. The *Hodnichak* court also cited *Clouston v. Remlinger Oldsmobile Cadillac, Inc.,* 22 Ohio St.2d 65, 258 N.E.2d 230 (Ohio 1970). This case is even farther off the mark, as it has nothing to do with insurance law or § 3937.18. It merely recognizes that in Ohio a wife has a loss of consortium claim where her husband is injured on account of either the negligence or intentionally tortious conduct of another.

If any party to the dispute at bar is extrapolating the law of Ohio, it is the Plaintiffs. If the *Ezawa* Court's holding, which, by inuring to the benefit of the minor son of an insured employee, logically extended the rule of *Scott–Pontzer* to its apogee, was not based on the language "if you are an individual, any family member," then, and only then, would one reasonably expect an expanded opinion from the Ohio Supreme Court. In other words, it is reasonable, perhaps even required, to presume that the *Ezawa* Court was ruling on the basis of the same policy language it had construed in *Scott–Pontzer.* It would be quite extraordinary, by contrast, to conclude that the Court had something else in mind. Certainly, if it had intended to expand insurance coverage to family members in every instance where one family member is an employee of a corporation that itself owns an automobile liability policy, *without regard to the terms of the policy,* it would have stated as much.

In short, even if Mr. Szabo were found to have been insured under the CGU policy, which he most certainly was not, his daughter Ashleigh was not.

The only other issue to examine is whether Mr. Szabo, Mrs. Szabo, and Brent Szabo, have claims for the loss of consortium of Ashleigh. Given the fact that they have no claim in contract against CGU, nor any claim in tort, even if Ohio recognized such an action, it would not be well taken in this instance.

In sum, the Plaintiffs have failed to show a genuine issue of material fact, and the Defendant is therefore entitled to judgment as a matter of law.

### III. *Conclusion*

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment (Doc. # 16) is OVERRULED, and Defendant's Motion for Summary Judgment (Doc. # 30) is SUSTAINED. Judgment will enter in favor of the Defendant and against the Plaintiffs.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.