GIANT EAGLE, INC., Plaintiff,

v.

GENESIS INSURANCE CO., et al., Defendants.

No. C2–02–175.

United States District Court, S.D. Ohio, Eastern Division.

March 20, 2003.

Scott D. Livingston, Marcus & Shapira, Pittsburgh, PA, Robert C. McClelland, Rademaker, Matty, McClelland & Greve, Cleveland, OH, For Plaintiff and Counter-Claimant.

Clement John DeMichelis, Ralph G. Winters, McCaslin, Imbus & McCaslin, Cincinnati, OH, for Genesis Ins. Co., defendant and counter-claimant.

Kenneth J. Knabe, Lakewood, OH, for Andrew and JoAnn Chafee, defendants.

Jeffrey W. Fodor, Warren, OH, for Brandon F. Fellows, Michelle Fellows, Michelle Fellows–Knox, defendants.

Perry R. Silverman, Columbus, OH, M. David Smith, Cleveland, OH, for Anisia Piciorea, Sorin Piciorea, Emmett Tolbert, Ramona Tolbert, defendants.

Brian Green, Erie, PA, Michael I. Shapero, Shapero, McGinnis, Green, Tater

& Michel, Beachwood, OH, for Jeff Uguc-cini, Georgina Uguccini.

### AMENDED OPINION AND ORDER

GRAHAM, District Judge.

In this declaratory judgment action, Giant Eagle, Inc. ("Giant Eagle"), seeks a declaration regarding the existence of uninsured motorist/underinsured motorist ("UM/UIM") coverage in connection with business automobile liability insurance policies it purchased from defendant Genesis Insurance Company ("Genesis"), in the years 1995 through 2002.

In the aftermath of the Ohio Supreme Court's decision in *Scott–Pontzer v. Liberty Mutual Fire Ins. Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999),[1] fourteen separate actions were filed against Giant Eagle and/or Genesis, asserting claims for UM/UIM benefits under the Genesis policies. All of the claimants in these actions have been joined as defendants herein. The Genesis policies provided business automobile liability insurance to Giant Eagle, subject to a $250,000 retention provision which required Giant Eagle to pay the first $250,000 of liability for each accident. The Genesis policies did not include UM/UIM coverage. The issues presented are whether UM/UIM coverage is implied as a matter of law pursuant to *Scott–Pontzer* and its progeny, and, if so, whether the $250,000 retention applies to the UM/UIM coverage.

Giant Eagle is a Pennsylvania corporation, having its principal place of business in Pittsburgh, Pennsylvania. Giant Eagle operates wholesale food distribution centers and retail supermarkets in Pennsylvania, Ohio, West Virginia and Maryland. Giant Eagle operates a fleet of tractor-trailers, trucks, and other motor vehicles throughout its market area. Genesis is a Connecticut corporation having its principal place of business in Stamford, Connecticut. Genesis is in the business of issuing policies of commercial insurance, including automobile liability insurance, to businesses throughout much of the United States. The claimants are Ohio residents, who are either current or former Giant Eagle employees, or family members of current or former Giant Eagle employees. Each of them claims that the Genesis policies provide UM/UIM coverage which is implied as a matter of law and that they are entitled to recover UM/UIM benefits.

The Genesis policies commenced on July 1, 1995, and were renewed annually, or biennially, thereafter. The Genesis policies provided automobile liability coverage in the amount of $750,000, over and above the $250,000 retention, which is referred to in the policies as a $250,000 deductible. In consideration of the issuance of the policies, Giant Eagle and Genesis entered into a claim service agreement, wherein Giant Eagle agreed to investigate, adjust and settle or defend any claims against it that involved or related to the coverage afforded under the policy.

### I. Summary Judgment Standard

This matter is now before the court on motions for summary judgment filed by Giant Eagle, Genesis and most or all of the defendants.

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

**1.** In *Scott–Pontzer,* the court held that a corporation's business automobile insurance policy containing UM/UIM coverage, which defined the insured as "you", provided UM/UIM benefits for an employee of the corporation who was injured outside the scope of his employment while operating a vehicle owned by his wife.

matter of law." *See LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir.1993); *Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs.*, 979 F.2d 1131, 1133 (6th Cir.1992)(per curiam).

## II. Choice of Law

A federal court sitting in diversity must apply the substantive law of the state in which it sits, including that state's choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 449 (6th Cir.2000).

■ Giant Eagle and Genesis assert that Pennsylvania law applies to the Genesis policies, and that, because Pennsylvania rejects the *Scott–Pontzer* doctrine, the Genesis policies did not include UM/UIM coverage. Giant Eagle and Genesis argue that Pennsylvania law applies by virtue of a choice of law provision which was part of the insurance agreement. In the alternative, Giant Eagle and Genesis argue that Pennsylvania law would apply to their relationship under the principles embodied in Section 188 of the Restatement of the Law 2d, Conflict of Laws (1971) ("Restatement") because Pennsylvania has the most significant relationship to the transaction and the parties. Section 188 of the Restatement was adopted by the Ohio Supreme Court in *Gries Sports Ent., Inc. v. Modell*, 15 Ohio St.3d 284, 473 N.E.2d 807 (1984). *See also Schulke Radio Prods., Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 453 N.E.2d 683 (1983).

The Genesis policies do not contain a choice of law provision. The choice of law provision cited by Giant Eagle and Genesis appears in the claim service agreement, Section 12, which states:

This Agreement shall be construed and enforced in accordance with and governed by the laws of the state of Pennsylvania.

This choice of law provision refers to the Claims Services Agreement, not the insurance policies. It is the insurance policies which control the coverage afforded by the policies. Thus, the choice of law provision does not apply to the issues presented in this case.

In *Ohayon v. Safeco Ins. Co. of Illinois*, 91 Ohio St.3d 474, 747 N.E.2d 206, Syllabus Para. 2, 91 Ohio St.3d 474, 747 N.E.2d 206 (2001), the Ohio Supreme Court held that questions involving the nature and extent of the parties' rights and duties under an insurance contract's uninsured motorist provisions shall be determined by the law of the state selected by applying the rules in §§ 187 and 188 of the Restatement. The court further held that under § 188 of the Restatement, the law of the state which has the most significant relationship to the transaction and the parties controls their relationship. *Id.* at 477, 747 N.E.2d 206.

Section 188(2)(a)-(d) of the Restatement provides that in determining which state has the most significant relationship to a transaction, courts should consider the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties. According to § 188 of the Restatement: "[t]hese contracts are to be evaluated according to their relative importance with respect to the particular issue." Restatement § 188(1) at 575. Each of the § 188 elements does not merit equal weight. Section 193 of the Restatement provides that rights created by an insurance contract should be determined "by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the

policy, unless with respect to the particular issues, some other state has a more significant relationship ... to the transaction and the parties." Restatement § 193 at 610. Section 193, Comment B, explains that the principal location of the insured risk corresponds with one of the enumerated factors—the location of the subject matter of the contract—in § 188.

The policies were negotiated in Pennsylvania. Genesis has its principal place of business in Connecticut. Giant Eagle's principal place of business is in Pennsylvania, but it also does a substantial amount of business in the state of Ohio. The place of performance of the insurance policies includes both Pennsylvania and Ohio. The policies insured a substantial number of vehicles licensed, operated and garaged in Ohio. Giant Eagle and Genesis note that during most of the policy years, a majority of vehicles were licensed and garaged in Pennsylvania. However, Giant Eagle concedes that during some policy years, the number of vehicles licensed and garaged in Ohio was equal to those licensed and garaged in Pennsylvania. The record includes a document produced by National Union Insurance Company, the umbrella insurer for the Genesis Business Auto Policy, which indicates that during the year 2000, Giant Eagle and its subsidiary and affiliated corporations operated 145 tractors, 302 trailers, 46 trucks/vans, and 146 private passenger vehicles in Ohio. *See* Chaffees' Memorandum in Opposition to Giant Eagle's Motion For Summary Judgment, Exh. 7.

The policies are written with reference to the laws of each of the states in which Giant Eagle operates motor vehicles. For example, the policies include a form indicating that Genesis filed certificates of insurance with state commissions in both Ohio and Pennsylvania in order to comply with the Motor Carrier Act of 1980. The policy issued on April 1, 1999, includes an endorsement entitled "Ohio Changes", which modified the policy in order to conform with the requirements of Ohio law. The record also includes documents produced by Giant Eagle in state court litigation, specifically, forms rejecting uninsured motorist coverage which specifically reference Ohio law and its requirement of mandatory offering of uninsured motorist coverage. These rejection forms indicate that Giant Eagle and Genesis were well aware that uninsured motorist coverage would automatically attach to the Genesis policies under Ohio law unless such coverage was effectively rejected. This evidence shows that Giant Eagle and Genesis contemplated, with respect to Giant Eagle's Ohio operations, that Ohio law would govern the issue of uninsured motorist coverage.

The place of performance with respect to the vehicles licensed operated and garaged in Ohio would be Ohio. According to the Restatement, the most important factor to be considered in determining what state's law applies to a contract of insurance is the state where the risk is located. In *Henderson v. Lincoln National Speciality Ins. Co.*, 68 Ohio St.3d 303, 626 N.E.2d 657 (1994), the Ohio Supreme Court answered in the affirmative the following question certified by the United States District Court for the Northern District of Ohio:

"Does Ohio Revised Code § 3937.18 apply to an automobile liability or motor vehicle liability policy of insurance covering vehicles registered and principally garaged in Ohio, when said policy was not delivered, or issued for delivery in Ohio by the insurer?" Thus, Ohio law applies to the Genesis policies with respect to Giant Eagle's operations in Ohio.

**III. Purported Rejection of UM/UIM Coverage**

Giant Eagle and Genesis assert that Giant Eagle effectively rejected UM/

UIM coverage when it purchased the business auto policies from Genesis.

From approximately the mid–1960s until October 31, 2001, Ohio Rev.Code § 3937.18 required either the mandatory provision or mandatory offering of UM/UIM coverage at the time of the issuance of any motor vehicle liability insurance policy. In *Linko v. Indemnity Ins. Co. of N. Am.*, 90 Ohio St.3d 445, 449, 739 N.E.2d 338, 342 (2000), the Supreme Court of Ohio held that the version of § 3937.18 in effect in 1996 required a written offer and a written rejection of UM/UIM coverage. The court also noted that in order to satisfy the requirement of an offer, the insurer must: 1) inform the insured of the availability of UM/UIM coverage; 2) set forth the premium for the coverage; 3) include a brief description of the coverage, and 4) expressly state the amount of the UM/UIM coverage limits being offered. *Id.*

Former § 3937.18(C), amended effective September 3, 1997, stated, *inter alia*, "[a] named insured's or applicant's written, signed rejection of [UM/UIM] coverages ... shall be effective on the day signed, shall create a presumption of an offer of coverages consistent with division (A) of this section, and shall be binding on all other named insureds, insureds, or applicants." In the aftermath of this amendment, it was unclear whether the requirements of *Linko* remained in effect. The Ohio Supreme Court answered this question on December 24, 2002, in the case of *Kemper v. Michigan Millers Mutual Ins. Co.*, 98 Ohio St.3d 162, 781 N.E.2d 196 (2002), holding that the rejection requirements survived the 1997 amendment to § 3937.18(C), and that a signed rejection of UM/UIM coverage would not constitute an effective rejection where there was no other evidence, oral or documentary, of an offer which complied with the requirements of *Linko*.

Here, the record includes two signed rejections of UM/UIM coverage, but the documents do not comply with the requirements of *Linko* and there is no other evidence, oral or documentary, that Genesis offered UM/UIM coverage to Giant Eagle in accordance with the requirements of *Linko*. Accordingly, if O.R.C. § 3937.18 applies here, UM/UIM coverage was not effectively rejected when Genesis issued the business auto liability policies to Giant Eagle.

## IV. Giant Eagle's Status as a Practical Self–Insurer

■ Section 3937.18 does not apply to self-insurers. *Grange Mutual Cas. Co. v. Refiners Transport & Terminal Corp.*, 21 Ohio St.3d 47, 487 N.E.2d 310 (1986). Ohio Rev.Code § 4509.72 sets forth the requirements for a self insurer. Giant Eagle did not comply with these requirements, but argues that it is a practical self-insurer as that concept was discussed by the Ohio Supreme Court in *Refiners Transport*, 21 Ohio St.3d at 49, 487 N.E.2d at 312. In *Refiners Transport*, the defendant had satisfied Ohio's Financial Responsibility Act requirements with a hybrid program consisting of a financial responsibility bond for the first $100,000 of loss, coupled with excess insurance coverage. The Ohio Supreme Court commented that Refiners "was not a 'self-insurer' in the legal sense ... but rather in the practical sense in that Refiners was ultimately responsible under the term of its bond either to a claimant or the bonding company in the event the bond company paid any judgment claim." *Id.* at 49, 487 N.E.2d at 313. The court went on to note that Refiner's "status was actually that of a bond principal and not a self-insurer[.]"

The court's decision in *Refiners Transport* is not particularly helpful in the in-

stant case where the issue involves the duty of Genesis, who stands in the position of the excess insurer, to offer uninsured motorist coverage. In *Refiners Transport,* the court's consideration was limited to the first $100,000 of liability which was secured by a bond. No claim was made against the company that issued the excess insurance.

The instant case is also unlike the situation in *Lafferty v. Reliance Ins. Co.,* 109 F.Supp.2d 837 (S.D.Ohio 2000), where the insurance policy was actually a "fronting policy" with a deductible equal to the liability limits, so that, in effect, all the insurer was providing was claims administration services, not liability insurance. Here, by contrast, the Genesis policies provide $750,000 of liability insurance above the $250,000 deductible. Under the circumstances, Giant Eagle is not a practical self-insurer.

## V. Effect of Liability Deductible on UM/UIM Coverage Arising by Operation of Law

■ If UM/UIM coverage arises by operation of law, it would be subject to the $250,000 deductible feature of the liability policy. This follows from the language of § 3937.18(A), which in all of its versions, required UM/UIM coverage to "be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage[.]" § 3937.18(A). In *Scott–Pontzer,* the court held that "any language in the Liberty Mutual umbrella policy restricting insurance coverage was intended to apply solely to excess *liability* coverage and not for purposes of underinsured motorist coverage." 85 Ohio St.3d at 666, 710 N.E.2d at 1120 (emphasis in original). The *Scott–Pontzer* court relied on *Demetry v. Kim,* 72 Ohio App.3d 692, 698, 595 N.E.2d 997, 1001 (1991), where the court stated that "there is nothing, absent clear language evidencing an intent to do so, to prevent [UM/UIM] coverage from being

broader than liability coverage." Neither *Scott–Pontzer,* nor *Demetry v. Kim,* involved the precise issue presented here. They involved exclusionary language in a liability policy, not a self-retention or deductible provision, in other words, they did not involve the amount of coverage. The *amount* of UM/UIM coverage implied as a matter of law is a different question than the question whether UM/UIM coverage implied as a matter of law is subject to exclusions included in the liability coverage. The former implicates the above quoted language of § 3937.18(A), but the latter does not. The language of the statute controls the amount of UM/UIM coverage, which Genesis was required to issue and the amount, which would be implied as a matter of law. *See Moyer v. Transamerica Ins. Co.,* No. 53524, 1987 WL 18800, *1, 1987 Ohio App. LEXIS 9271, at *2 (Oct. 22, 1987) ("Since the liability coverage on the record policy did not begin until a retained limit of $500,000 was exceeded, the UMC engrafted by the statute begins at the same point.") (Ex. 23); *but see Dolly v. Old Republic Ins. Co.,* 200 F.Supp.2d 823 (N.D.Ohio 2002).

## VI. Applicability of *Scott–Pontzer* to Instant Case

In *Scott–Pontzer,* Christopher T. Pontzer, an employee of Superior Dairy, Inc. ("Superior"), was killed in an accident that had nothing to do with his employment while he was driving an automobile owned by his wife, Kathryn Scott–Pontzer. Superior was insured under a commercial automobile liability policy issued by Liberty Mutual Fire Insurance Company ("Liberty Fire"). Superior was also insured under an umbrella excess insurance policy issued by Liberty Mutual Insurance Company ("Liberty Mutual"). The declarations page of the Liberty Fire policy named Superior Dairy, Inc. as the named insured. The Liberty Fire policy included

UIM coverage. The definition of an "insured" for the purposes of UIM coverage was "You" and "If you are an individual, any family member."

Liberty Fire argued that the policy language indicated the parties' intent that Superior was the only named insured and that the policy did not provide individual coverage for any of Superior's employees. The Ohio Supreme Court disagreed, noting that it "would be reasonable to conclude that 'you,' while referring to Superior Dairy, also includes Superior's employees, since a corporation can act only by and through real live persons." *Scott–Pontzer*, 85 Ohio St.3d at 664, 710 N.E.2d at 1119. The court found that the definition of "insured" was ambiguous, applied the well-settled rule that policies of insurance will be construed favorably to the insured, and held that Pontzer was an insured under the UIM coverage provided by the Liberty Fire policy. *Id.* at 665, 710 N.E.2d at 1119.

The court also held that Pontzer was an insured for the purposes of UIM coverage under Liberty Mutual's umbrella policy even though that policy did not include UIM coverage. This finding was based on the fact that Liberty Mutual had failed to offer such coverage as required by § 3937.18, and its failure to do so resulted in the existence of UIM coverage by operation of law. *See Gyori v. Johnston Coca–Cola Bottling Group, Inc.*, 76 Ohio St.3d 565, 568, 669 N.E.2d 824, 826 (1996). The

court held that Pontzer, as an employee of Superior Dairy, was also an insured under Superior Dairy's umbrella/excess insurance policy. *Scott–Pontzer*, 85 Ohio St.3d at 665, 710 N.E.2d at 1119.

The foundation for the court's ruling in *Scott–Pontzer* was the definition of insured in the UM/UIM coverage issued by Liberty Fire to Pontzer's employer, Superior. Unlike Superior's policy in *Scott–Pontzer*, Giant Eagle's business automobile policy did not include UM/UIM coverage. As a result, in the instant case, there is no underlying UM/UIM coverage with an ambiguous definition of the corporate insured. This is a distinction which is ultimately fatal to the defendants' claims against Giant Eagle and Genesis.

If § 3937.18 applies in this case, Genesis was required to provide or offer UM/UIM coverage to "persons insured under the [automobile liability] policy."[2] If UM/UIM coverage was not provided or offered to a person insured under the liability policy, then it would be implied as a matter of law. Thus, the question of whether UM/UIM coverage is implied as a matter of law in favor of any of the defendants must begin with the question of whether they are insured under the liability policy.[3]

The definition of insured in the Genesis business auto coverage form is as follows:

1. WHO IS AN INSURED
   The following are "insureds":

---

**2.** The version of § 3937.18(A) which was in effect from 1994 until September 3, 1997, required that UM/UIM coverage be "provided to persons insured under the policy" subject to the named insured's right to reject it, whereas the version of § 3937.18(A) in effect from September 3, 1997, until October 31, 2001, required that such coverages be "offered to persons insured under the policy". In both instances, "the policy" referred to a policy of automobile or motor vehicle liability insurance.

**3.** The Ohio Supreme Court addressed this as the first issue to be decided in *Scott–Pontzer*, noting that "if we find [the plaintiff] was not an insured under the policies, then our inquiry is at an end". 85 Ohio St.3d at 662, 710 N.E.2d 1116; *see also Martin v. Midwestern Group Ins. Co.*, 70 Ohio St.3d 478, 480, 639 N.E.2d 438, 440 (1994) (specifying that the claimant must be an insured in order to recover).

a. You for any covered "auto."

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

(1) The owner or anyone else from whom you hire or borrow a covered "auto." This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

(2) Your employee if the covered "auto" is owned by that employee or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving property to or from a covered "auto."

(5) A partner of yours for a covered "auto" owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

The Ohio Supreme Court has held that § 3937.18 does not prohibit the parties to an insurance contract from defining who is an insured person under the policy. *See Holliman v. Allstate Ins. Co. Corp.*, 86 Ohio St.3d 414, 416–417, 715 N.E.2d 532, 534–35 (1999). In this case, none of the defendants fits within the definition of an insured in the Genesis policy. While some of the defendants were employees of Giant Eagle, none of them was using, with Giant Eagle's permission, a covered auto owned, hired or borrowed by Giant Eagle.

Defendants argue that they are insureds under the rationale of *Scott–Pontzer* because the first definition of an insured in the Genesis business auto liability cover-age form includes the word "you". Although the *Scott–Pontzer* court found that the word "you" in the definition of "insured" in the Liberty Fire UM/UIM coverage was ambiguous, the court's holding was limited to the language in the policy of UM/UIM coverage issued by Liberty Fire to Pontzer's employer, Superior Dairy. What created the ambiguity in *Scott–Pontzer* was the use of the word "you" to define a corporate insured where the coverage included bodily injury and death sustained by an insured. A corporation can *cause* bodily injury or death for the purposes of a liability policy, but it cannot *sustain* bodily injury or death for the purposes of UM/UIM coverage. In finding that "you" was ambiguous in Liberty's Ohio Uninsured Motorist coverage form, the *Scott–Pontzer* court noted:

> It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless, unless the coverage extends to some person or persons—including to the corporation's employees.

85 Ohio St.3d at 664, 710 N.E.2d at 1119.

This ambiguity does not exist in the Genesis business auto liability policy. The Genesis policy does not provide any coverage for bodily injury or death sustained by an insured. In addition, the Genesis policy does not provide coverage to all employees regardless of what type of automobile they are using. Instead, the actual language of the definition of "insureds" limits coverage to "you for any covered 'auto.'" Furthermore, the definition of insured in the Genesis business auto liability policy specifically takes into account the existence of the employees of the corporation by defining "insureds" to include the corporation's em-

ployees when they are permissive users of covered autos. Unlike the UM/UIM policy in *Scott–Pontzer*, the Genesis liability policy clearly recognizes that the corporate insured's vehicles will be operated by "real live persons."

Because the ambiguity that existed in the UM/UIM policy in *Scott–Pontzer* does not exist in the liability policy in the instant case, there is no justification for applying the rule of *Scott–Pontzer* to the definition of "insured" in the instant case. *See Szabo v. CGU International Insurance PLC*, 227 F.Supp.2d 820 (S.D.Ohio 2002).

*Scott–Pontzer* was a four to three decision of a sharply divided court. It has been heavily criticized.[4] The first circuit aptly characterized it as an "anomaly" in *Seaco Insurance Co. v. Davis–Irish*, 300 F.3d 84 (1st Cir.2002). *Scott–Pontzer* and its progeny precipitated a crisis in the insurance industry in Ohio, which culminated in action by the Ohio General Assembly which eliminated the mandatory offering of UM/UIM coverage.[5] Justice Douglas, the author of the *Scott–Pontzer* decision, has since retired and many Ohio lawyers and judges believe that his successor is likely to side with the dissenters in *Scott–Pontzer*. While one might speculate about the overruling of *Scott–Pontzer*, even if it remains the law, it seems likely that future decisions of the Supreme Court of Ohio will not extend the rule of the case beyond its specific facts. A federal court

exercising diversity jurisdiction must, in the absence of a controlling decision by the state's highest court, base its ruling on its assumption of how the highest state court would rule if faced with the same case. *See Coffey v. Foamex L.P.*, 2 F.3d 157, 160 n. 1 (6th Cir.1993). I conclude that the Supreme Court of Ohio would not apply the rules of *Scott–Pontzer* and *Ezawa v. Yasuda Fire & Marine Ins. Co. of Am.*, 86 Ohio St.3d 557, 715 N.E.2d 1142 (1999), to the instant case.

Here, none of the defendants was using an automobile covered by the policy, and therefore, none of the defendants is an insured under the business auto liability policy. Genesis was not obligated to provide or offer UM/UIM coverage to these defendants, and UM/UIM coverage is not implied for them as a matter of law.

## VII. UM/UIM Coverage for Family Members

The court further concludes that, even assuming, *arguendo*, that the decision in *Scott–Pontzer* would result in implied coverage for all employees in this case, that coverage would not extend to the defendants who are family members of employees.

In *Ezawa*, the Supreme Court of Ohio extended the rule of *Scott–Pontzer* to the family members of a corporate insured's employees, in that case, the minor son of the insured's employee. *Ezawa*, like *Scott–Pontzer*, involved an uninsured mo-

**4.** *See Bianchi v. Moore*, No. 00–007, 2001 WL 34069321, *7, 2001 Ohio App. LEXIS 2105 at *19 (May 11, 2001) ("The rationale in *Scott–Pontzer* creates seemingly absurd results[.]"); "Liability Unlimited?" Editorial, THE COLUMBUS DISPATCH, June 3, 2001, at 2D ("Four justices of the Supreme Court have reached for a way to extend insurance coverage to people for whom it never was purchased. Ohioans have begun to pay dearly for these decisions."); Phil Porter, "Insuring Your Car Costs A Pretty Penny," THE COLUMBUS DISPATCH,

May 13, 2001, at 1F ("State Sen[ator] Scott–Nein ... sa[id] that [*Scott–Pontzer* and *Linko* ] threaten to cost more than $1.5 billion [as noted]. If the Ohio Supreme Court ruling in *Linko* and *Scott–Pontzer* were a natural disaster in terms of insured losses, these two rulings would constitute the costliest catastrophe in the world in the year 2000[.]").

**5.** *See Gibson v. New Hampshire Ins. Co.*, 178 F.Supp.2d 921, 921 n. 1 (S.D.Ohio 2001).

torist coverage form issued to a corporate insured which defined the "insured" as "[y]ou" and "[i]f you are an individual, any 'family member.' " *See Ezawa v. Yasuda Fire & Marine Ins. Co. of Am.,* No. 97APE10–1343, 1998 WL 353871 (Ohio App. June 30, 1998). The Ohio Supreme Court held that the employee's son was entitled to UIM coverage on the authority of *Scott–Pontzer. See Ezawa,* 86 Ohio St.3d at 558, 715 N.E.2d at 1143. It was the language defining "insured" as including any family member which led to the result in *Ezawa.*

There is no such language in the Genesis policy. Here, there was no UM/UIM coverage form, nor for that matter, any coverage form, which defined an "insured" as including a family member, and thus, *Ezawa* does not apply here. There is likewise no language in *Scott–Pontzer* which would mandate coverage for family members of employees. The Ohio Supreme Court in that case held that it would be reasonable to extend UM/UIM coverage to a corporation's employees because the corporate insured can act only through its employees. Whatever one may think of the merits of this logic, it certainly does not follow that coverage would also extend to the relatives of the corporate insured. There would be no coverage for defendants who are family members of Giant Eagle employees even if coverage is implied for employees under *Scott–Pontzer. See Szabo,* 227 F.Supp.2d at 835–36; *Gibson v. New Hampshire Ins. Co.,* 178 F.Supp.2d 921, 923–24 (S.D.Ohio 2001).

## VIII. Compensation for Loss of Consortium and Wrongful Death Claims Arising from Deaths of Family Members

Defendants argue that even if the family member defendants are not insured under implied UM/UIM coverage, the employee defendants would be entitled to UM/UIM benefits for loss of consortium and wrong-ful death arising out of the injuries to and deaths of their family members. They rely on *Sexton v. State Farm Mut. Auto. Ins. Co.,* 69 Ohio St.2d 431, 433 N.E.2d 555 (1982); and *Moore v. State Auto. Mut. Ins. Co.,* 88 Ohio St.3d 27, 723 N.E.2d 97 (2000).

In *Sexton,* the court considered the version of § 3739.18(A) then in effect, which required UM/UIM coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom." The *Sexton* court noted that the statute did not specify that an insured must sustain bodily injury in order to recover damages, and held that policy limitations allowing recovery only when an insured suffered bodily injury were void because they were contrary to the requirements of the statute. *Sexton,* 69 Ohio St.2d at 434–37, 433 N.E.2d at 558–560.

In 1994, § 3937.18 was amended to require the insurer to provide UM/UIM coverage "to persons insured under the policy for loss due to bodily injury or death suffered by such persons." Section 3937.18(A)(1) was amended to include the language "suffered by any person insured under the policy" immediately following the reference to damages for bodily injuries, sickness or disease, including death.

In *Moore,* the Ohio Supreme Court held that the 1994 amendments were "ambiguous regarding whether an insurer may limit uninsured motorist coverage to accidents in which an insured sustains bodily injury." 88 Ohio St.3d at 31, 723 N.E.2d at 101. The court further held that the statute "does not permit an insurer to limit uninsured motorist coverage in such a way that an insured must suffer bodily injury, sickness, or disease in order to recover dam-

ages from the insurer." *Id.* at 32, 723 N.E.2d at 102.

Section 3937.18 was again amended, effective September 3, 1997, apparently in response to the court's decision in *Moore.* In the 1997 amendment, § 3937.18(A) was amended to require the offering of UM/UIM coverage "to persons insured under the policy for loss due to bodily injury or death suffered by such insureds[.]" Section 3937.18(A)(1), relating to uninsured motorist coverage, was amended to require coverage for protection for bodily injury, sickness or disease, including death, "for the protection of insureds thereunder who are legally entitled to recover from owners or operators of uninsured motor vehicles[.]" This amendment substituted the words "an insured" and "the insured" for the words "a person," "he," and "his" in the description of who is "legally entitled to recover damages."

The 1997 amendment changed the language that the court relied upon in *Moore* to find the statute ambiguous. These amendments make it clear that the UM/UIM coverage required by the statute is limited to accidents in which an insured sustains bodily injury, sickness, disease or death. The 1997 amendments supercede the holdings in *Sexton* and *Moore.*

■ For the purpose of determining the scope of coverage for an uninsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties. *Ross v. Farmer's Ins. Group of Companies,* 82 Ohio St.3d 281, 287, 695 N.E.2d 732, 736 (1998). In *Wolfe v. Wolfe,* 88 Ohio St.3d 246, 250, 725 N.E.2d 261, 265 (2000), the Ohio Supreme Court held that the commencement of each policy period mandated by § 3937.31(A), brings into existence a new contract of automobile insurance, whether the policy is categorized as a new policy of insurance or a renewal of an existing policy. The 1997 amendments to § 3937.18 occurred after the Giant Eagle business auto liability policy had been renewed for the period July 1, 1997, to April 1, 1999. Accordingly, the amendments did not change the coverage provided by the Genesis policy until April 1, 1999. Until that date, the policies were governed by the rules of *Scott–Pontzer,* Sexton and *Moore.* Assuming, *arguendo,* that UM/UIM coverage was implied as a matter of law, then employees of Giant Eagle would be entitled to recover UM/UIM benefits under the Genesis policy for loss of consortium or wrongful death arising out of injuries to or the death of their family members prior to April 1, 1999. After April 1, 1999, the rule of *Sexton* and *Moore* would no longer apply to any UM/UIM coverage implied as a matter of law in connection with the Genesis policies, and none of the defendants would be entitled to recover UM/UIM benefits under the policies for injuries or deaths of family members of Giant Eagle employees after that date.

The court notes that the Common Pleas Court of Cuyahoga County, Ohio has held that defendant Anisia Piciorea is not entitled to UM/UIM coverage under the Giant Eagle business auto liability policy because she is not an insured under the policy, noting that "unlike Christopher Pontzer, Piciorea was not an employee of the named insured at the time of the accident." Anisia Piciorea would be collaterally estopped to further litigate that issue in this proceeding.

## IX. Section 3937.18 Does Not Apply To The Genesis Policies Issued On Or After April 1, 1999

■ The Genesis commercial auto policies are not automobile liability or motor vehicle liability policies as defined in O.R.C. § 3717.18(L).

The 1997 amendment to § 3937.18 added paragraph (L), which provides as follows:

(L) As used in this section, "automobile liability or motor vehicle liability policy of insurance" means either of the following:

(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance;

(2) Any umbrella liability policy of insurance.

Genesis points to the language of § 3937.18(L)(1), which refers to "motor vehicles specifically identified in the policy of insurance." Genesis argues that since its business auto liability policy does not specifically identify any motor vehicles, it does not satisfy the definition of a motor vehicle liability policy of insurance. Genesis further argues that the policy is thus not subject to the mandatory offering of UM/UIM coverage, and that no such coverage may be implied under *Scott–Pontzer* and its progeny. Page 2 of the declarations of the business auto coverage part includes a column for a description of covered autos, including year, model, trade name, body type, serial numbers, and VIN numbers. The first line of this column is filled in as follows: "Schedule on file with the company".

If the phrase "specifically identified in the policy of insurance" contained in § 3937.18(L)(1) refers to the owners or operators of the motor vehicles insured, then it is satisfied because the policy specifically identifies Giant Eagle and its subsidiaries as the insured. If the phrase refers to the motor vehicles covered by the policy, then it is satisfied by the schedule of specific vehicles "on file with the company" which must be considered as incorporated by reference in the policy of insurance.

Section 3937.18(L)(1) defines an "automobile liability or motor vehicle liability policy of insurance" as "any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by Division (K) of § 4509.01 of the Revised Code." Division (K) of § 4509.01 is part of Ohio's financial responsibility law, which is designed to protect the public by requiring that all automobiles and drivers be covered by certain minimum amounts of liability insurance. *See* O.R.C. Ch. 4509. Section 4509.101 provides in part as follows:

(A)(1) No person shall operate, or permit the operation of, a motor vehicle in this state, unless proof of financial responsibility is maintained continuously throughout the registration period with respect to that vehicle, or, in the case of a driver who is not the owner, with respect to that driver's operation of that vehicle.

Section 4509.01(K) defines proof of financial responsibility as follows:

(K) "Proof of financial responsibility" means proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of such proof, arising out of the ownership, maintenance, or use of a motor vehicle in the amount of twelve thousand five hundred dollars because of bodily injury to or death of one person in any one accident, in the amount of twenty-five thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of seven thousand five hundred dollars because of injury to property of others in any one accident.

It is obvious that an insurance policy that serves as proof of financial responsibility under the Ohio statutes must provide

primary liability coverage with limits equal to or in excess of $12,500 for bodily injury to, or death of one person, in any one accident; and in the amount of $25,000 because of bodily injury to, or death of two or more persons, in any one accident; and in the amount of $7,500 for property damage caused in any one accident. The Genesis commercial auto policy does not satisfy this requirement because it provides no liability coverage whatsoever for the first $250,000 of damages for property damage, personal injury, or death.

Section 3937.18(L)(2) provides an alternative definition of an "automobile liability or motor vehicle liability policy of insurance," to wit: "any umbrella liability policy of insurance." When § 3937.18(L) was enacted, the Ohio Revised Code did not define the term "umbrella liability policy of insurance." However, that term is generally understood to refer to any policy that provides excess coverage beyond an insured's primary policies. *See Midwestern Indemn. Co. v. Craig*, 106 Ohio App.3d 158, 164, 665 N.E.2d 712, 716 (1995) ("An umbrella policy is a policy which provides excess coverage beyond an insured's primary policies."); *Cleveland Builders Supply Co. v. Farmers Insurance Group of Companies*, 102 Ohio App.3d 708, 715, 657 N.E.2d 851, 852 (1995) (dispute over proposal for "primary coverage of $500,000 and umbrella coverage of $5,000,000.")

In 1999, the Ohio legislature, apparently recognizing that it had failed to define the term, amended § 3937.18(L) to include the following definition of an umbrella liability policy of insurance:

B.  Any umbrella liability policy of insurance written as excess over one or more policies described in Division (L)(1) of this section.

It is fair to assume that this is what the legislature intended all along when it referred to an "umbrella liability policy of insurance" in the 1997 amendment of § 3937.18.

Here, there is no primary coverage for the first $250,000 of liability risk; instead, there is a $250,000 self-insured retention. Thus, the Genesis commercial auto policy is not an "umbrella liability policy of insurance," and it does not satisfy either of the definitions of an automobile liability or motor vehicle policy of insurance set forth in § 3937.18(L). Accordingly, the Genesis commercial auto policies issued on and after April 1, 1999 [6] are not subject to the mandatory provisions of § 3937.18, relating to UM/UIM coverage. Genesis was not required to provide or offer UM/UIM coverage to Giant Eagle, and no UM/UIM coverage can be implied as a matter of law.

Prior to April 1, 1999, Genesis had a duty to offer UM/UIM coverage to Giant Eagle and coverage would be implied as a matter of law subject to the $250,000 retained limit. *See Duriak v. Globe Am. Cas. Co.*, 28 Ohio St.3d 70, 502 N.E.2d 620 (1986). However, such coverage would not extend to any of the defendants for the reasons stated in section VI, VII and VIII, hereof.

## X.  Issues Concerning Genesis Commercial General Liability Policy

In addition to the business auto policies, Genesis also issued Comprehensive General Liability ("CGL") policies to Giant Eagle. In its motion for summary judgment, Genesis seeks a declaration that the CGL policies do not provide UM/UIM coverage. Issues relating to the CGL policies are not before the court. These policies are not

---

6.  The 1997 amendments to § 3937.18 did not become applicable to the Genesis policies un-

til the April 1, 1999 renewal. *See supra*, p. 570–71.

referred to in Giant Eagle's complaint or Genesis's answer and counterclaim.

### XI. Motion to Strike Genesis' Motion for Summary Judgment

The motion of the Chaffee defendants to strike Genesis' motion for summary judgment insofar as it relates to the CGL policies is granted. As noted above, those policies are not mentioned in Giant Eagle's complaint or Genesis' answer or counterclaim.

### XII. Conclusion

The motions for summary judgment of plaintiff Giant Eagle, Inc., and defendant Genesis Insurance Co. are granted. The motions for summary judgment of the remaining defendants are denied. The clerk shall enter final judgment in favor of plaintiff Giant Eagle, Inc., and defendant Genesis Insurance Co. declaring that Giant Eagle, Inc., and Genesis Insurance Co. have no obligation to provide uninsured motorist or underinsured motorist insurance benefits to any of the defendants in relation to the business automobile liability insurance policies issued by Genesis Insurance Co., and Giant Eagle, Inc., in the years 1995 through 2002. Costs are taxed against all defendants except defendant Genesis Insurance Co.

It is so ORDERED.